ALLIANCE TO PROTECT NANTUCKET SOUND, INC. *vs.* DEPARTMENT OF PUBLIC UTILITIES & others[1] (No. 2).

Suffolk. September 8, 2011. - December 28, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Department of Public Utilities. Public Utilities,* Electric company, Judicial review. *Administrative Law,* Judicial review, Proceedings before agency.

Discussion of the appropriate standard of review to apply to a procedural decision by an agency on whether to reopen an administrative record. [192-194]

The Department of Public Utilities (department) did not abuse its broad discretion in denying, following the issuance of the department's final decision in a proceeding for review and approval of certain power purchase agreements, a third motion filed by an intervener to reopen the administrative record to admit additional evidence, where the intervener failed to demonstrate either compelling circumstances or good cause to reopen the record, as required by the department's regulations, given that the evidence proffered by the intervener was, at best, cumulative of what the record already contained. [194-197]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 12, 2011.

The case was reported by *Botsford,* J.

*Evan T. Lawson* (*Glenn S. Benson,* of the District of Columbia, & *Michelle A. Hunton* with him) for the plaintiff.

*Kenneth W. Salinger,* Assistant Attorney General, for the defendant.

*David S. Rosenzweig* (*Erika J. Hafner* with him) for the interveners.

BOTSFORD, J. We address here a procedural question that relates to *Alliance to Protect Nantucket Sound, Inc.* v. *Department of*

---

*Pub. Utils. (No. 1), ante* 166 (2011) (*Alliance III*),[2] decided today. The question is whether the Department of Public Utilities (department) committed error in denying the third motion filed by the Alliance to Protect Nantucket Sound, Inc. (Alliance), to reopen the administrative record in the proceeding that we reviewed in *Alliance III, supra.* We remand the matter to the single justice to enter an order affirming the department's order denying the motion to reopen.

1. *Background.* On May 10, 2010, Massachusetts Electric Company and Nantucket Electric Company, each doing business as National Grid (collectively, National Grid), pursuant to § 83 of the Green Communities Act, St. 2008, c. 169, § 83 (§ 83), filed with the department its petition for review and approval of the power purchase agreements (PPAs, or contracts) between National Grid and Cape Wind Associates, LLC (Cape Wind). On June 9, the department issued its order in D.P.U. 10-58 (2010) (D.P.U. 10-58), suspending the geographic limitation provision contained in the first paragraph of § 83. See *Alliance III, supra* at 170-171.[3]

The evidentiary record in National Grid, D.P.U. 10-54 (2010) (D.P.U. 10-54), closed on October 1, 2010. On October 8 and 29, 2010, the Alliance filed two separate motions in that proceeding to reopen the record and admit additional evidence.[4] On November 22, 2010, the department issued its decision and final order in D.P.U. 10-54, approving the first of the two proposed PPAs between National Grid and Cape Wind, referred to

---

[2]See *Alliance to Protect Nantucket Sound, Inc.* v. *Energy Facilities Siting Bd.,* 448 Mass. 45 (2006) (*Alliance I*); *Alliance to Protect Nantucket Sound, Inc.* v. *Energy Facilities Siting Bd.,* 457 Mass. 663 (2010) (*Alliance II*).

[3]As set forth in *Alliance to Protect Nantucket Sound, Inc.* v. *Department of Pub. Utils. (No. 1), ante* 166, 175 n.16 (2011) (*Alliance III*), in D.P.U. 10-58 (2010) (D.P.U. 10-58), the Department of Public Utilities (department) required, inter alia, that an earlier request for proposals (RFPs) issued by the distribution companies be revised and reopened to allow eligible out-of-State generators to submit proposals, and that National Grid demonstrate in the power purchase agreement (PPA) approval proceeding, National Grid, D.P.U. 10-54 (2010) (D.P.U. 10-54), whether and how it had complied or would comply with the order in D.P.U. 10-58 and accompanying emergency regulations that no longer contained the geographic limitation provision.

[4]In its first motion to reopen, the Alliance to Protect Nantucket Sound, Inc. (Alliance), sought to admit all bids that National Grid had received in response to the revised and reopened RFPs. The second motion sought to introduce media reports related to the Cape Wind project.

as PPA-1. On the same date, the department issued a separate order denying the Alliance's two motions to reopen the record. On December 10, 2010, the Alliance and other parties that had intervened in D.P.U. 10-54 filed their appeals from the department's decision and order in that proceeding. See *Alliance III, supra* at 171. The Alliance did not appeal from the department's denial of its two motions to reopen.

On March 3, 2011, the Alliance filed a third motion to reopen the record in D.P.U. 10-54 to admit additional evidence. This motion, the subject of the present appeal, sought to introduce unredacted copies of documents filed with the department by NSTAR Electric Company (NSTAR) in connection with its petitions for approval of PPAs between it and three renewable energy developers (NSTAR filings or NSTAR PPAs).[5] The NSTAR PPAs were solicited and negotiated in connection with the revised RFP process that no longer contained the geographic limitation provision requirements (see note 3, *supra*). The Alliance argued that the NSTAR filings were "highly relevant" to the determination whether PPA-1 was cost effective and in the public interest.[6]

On May 9, 2011, the department denied the Alliance's third motion to reopen. The department concluded in its decision that the Alliance had failed to demonstrate "compelling circumstances" or "good cause" to reopen the record, as required by the department's regulations, 220 Code Mass. Regs. § 1.11(7) and (8) (2008). On May 12, the Alliance filed its petition of appeal in the county court pursuant to G. L. c. 25, § 5. A single justice reserved and reported the case to the full court.

2. *Discussion. a. Standard of review.* As indicated, the single issue raised here is whether the department properly denied the

---

[5]The PPAs are respectively between NSTAR Electric Company (NSTAR) and (1) Groton Wind, LLC, which is proposing a renewable energy generation facility in Groton, New Hampshire; (2) New England Wind, LLC, proposing such a facility in Monroe and Florida, Massachusetts; and (3) Blue Sky East, LLC, proposing such a facility in Eastbrook, Maine.

[6]Associated Industries of Massachusetts (AIM) supported reopening the record to admit NSTAR's filings for the reasons stated in the Alliance's motion, and also requested that the department admit the filing of Western Massachusetts Electric Company in D.P.U. 11-12 (2011). AIM has not appealed from the department's denial of its request to reopen, and therefore we do not discuss the denial of AIM's request or the other filing here.

Alliance's third motion to reopen the record in D.P.U. 10-54. The parties differ on the appropriate standard of review. The Alliance argues that this case is one of constitutional dimension because its motion to reopen sought to introduce evidence relevant to the claim advanced in D.P.U. 10-54 that in approving PPA-1, the department violated the commerce clause of the United States Constitution; the presence of this constitutional issue, the argument continues, obligates this court to conduct an independent review of law and fact. The department contends that the independent review standard applies only where there is a claim that rates set by the department are confiscatory, and because no claim of unconstitutional confiscation was raised by any party in D.P.U. 10-54, the appropriate standard of review is one of abuse of discretion.

We need not resolve this dispute over the standard of review, because the Alliance's motion to reopen the record in fact did not concern the commerce clause claim raised by the Alliance and other interveners in D.P.U. 10-54. As discussed in *Alliance III*, the interveners' commerce clause argument in D.P.U. 10-54 focused on the department's approval of National Grid's contract, PPA-1, that had been negotiated and executed while § 83's allegedly unconstitutionally geographic limitation provision was still operative and casting its shadow over the negotiation process. See *Alliance III, supra* at 172-173. In its motion to reopen, however, the Alliance never claimed that the information contained in the NSTAR filings touched on National Grid's negotiation of the contract with Cape Wind or the department's approval of that negotiation. Rather, the contention advanced was that the NSTAR filings related to the cost effectiveness of PPA-1. The issue whether PPA-1 is "cost effective" as that term is used in § 83 simply does not implicate any constitutional interest or right that the Alliance is entitled to assert.

Accordingly, we apply the more deferential standard of review that generally applies to procedural decisions by agencies on whether to reopen an administrative record. See, e.g., *Box Pond Ass'n* v. *Energy Facilities Siting Bd.*, 435 Mass. 408, 420 (2001) ("we accord agencies broad discretion in deciding whether to [reopen a record and hearing to present additional evidence], and an agency's refusal to reopen is not disturbed absent an

abuse of that discretion").[7] In doing so, we look to see whether the record shows that the department examined the merits of reopening and properly concluded that reopening was not warranted. See *Alliance to Protect Nantucket Sound, Inc.* v. *Energy Facilities Siting Bd.*, 448 Mass. 45, 50 n.6 (2006) (*Alliance I*).

b. *Decision not to reopen.* The department's regulations on the filing of documents subsequent to a hearing and reopening require the applicant to make a showing of "good cause." 220 Code Mass. Regs. § 1.11(7),[8] (8).[9] In determining whether there is "good cause" to reopen the record, the department considers whether "the proponent has previously unknown or undisclosed information, regarding a material issue, that would likely have a significant impact on the decision already rendered." Machise *vs.* New England Tel. & Tel. Co., D.P.U. 87-AD-12-B, at 4 (1990), citing Tennessee Gas Pipeline Co., D.P.U. 85-207-A (1986).

In denying the Alliance's motion, the department explained that when a party seeks to reopen the record after the agency has issued its final decision, the "good cause" standard should be, and is, more difficult to meet than when the request to reopen comes before the agency's final decision and order. It

---

[7]See also *Zachs* v. *Department of Pub. Utils.*, 406 Mass. 217, 227 (1989), a case similarly raising a question whether the department committed error in not reopening a concluded administrative hearing. We stated: "In general, administrative agencies have broad discretion over procedural aspects of matters before them. The decision whether to reopen hearings is one such procedural matter on which we have accorded agencies a great deal of flexibility. In this case, this principle is additionally embodied in the department's regulation governing the reopening of hearings. . . . Therefore, we will not disturb the department's decision not to reopen hearings without the demonstration of error of law or abuse of discretion." (Citations omitted.)

[8]Title 220 Code Mass. Regs. § 1.11 (7) (2008), entitled "Filing of Documents Subsequent to Hearing," states in relevant part: "The Department may, *for good cause shown,* allow the parties to file evidentiary documents of any kind, or exhibits, at a time subsequent to the completion of hearing, such time to be determined . . ." (emphasis added).

[9]Title 220 Code Mass. Regs. § 1.11 (8) (2008), entitled "Reopening Hearings," states in relevant part: "No person may present additional evidence after having rested nor may any hearing be reopened after having been closed, except upon motion and *showing of good cause.* . . . Notwithstanding the above, the Department may, at any time prior to the rendering of a decision, reopen the hearing on its own motion" (emphasis added).

461 Mass. 190 (2011)                                   195

Alliance to Protect Nantucket Sound, Inc. *v.* Department of Public Utilities (No. 2).

reasoned that the discretion to reopen a closed proceeding should be exercised sparingly in order to preserve the "resolving force" of final administrative decisions, citing *Stowe* v. *Bologna,* 32 Mass. App. Ct. 612, 616 (1992), *S.C.,* 415 Mass. 20 (1993) ("the power [to reopen an administrative proceeding] must be sparingly used if administrative decisions are to have resolving force on which persons can rely"). The mere availability of additional evidence is insufficient; instead, the moving party must demonstrate "compelling circumstances" that warrant reopening, so as to preserve finality. See *Covell* v. *Department of Social Servs.,* 42 Mass. App. Ct. 427, 433 (1997) ("agencies have inherent power to reopen their concluded proceedings in compelling situations as justice may require").

Turning to the substance of the Alliance's motion, the department stated that the NSTAR filings "would not likely have a significant impact" on its decision in D.P.U. 10-54. Specifically, the department found that the record in D.P.U. 10-54 contained "concrete evidence on the pricing of other available renewable energy projects," and therefore that the NSTAR filings would be "cumulative at best" on the issue of cost effectiveness.

Nothing about the reasons cited by the department constitute an abuse of discretion. See *Brookline* v. *Commissioner of the Dep't of Envt'l Quality Eng'g,* 387 Mass. 372, 385 (1982), and cases cited ("When the issues and facts have been argued at length in adjudicatory hearings, and when the agency has made a reasoned record describing why rehearing was denied, we give great deference to the decision denying rehearing"). We agree with the department that finality of administrative decisions is a significant concern — significant to the parties, to the agency, and to the public served by the agency. See *Stowe* v. *Bologna,* 32 Mass. App. Ct. at 616. Cf. *Commonwealth* v. *Amirault,* 424 Mass. 618, 637 (1997) (in criminal context, in accommodating needs of community and procedural rights of defendant in criminal case, "once the regular procedures have run their course the presumption tilts heavily toward finality"). Accordingly, the department stood on firm ground in requiring demonstration of a compelling reason to reopen a hearing after the agency's final decision had issued.

The department permissibly could determine as well that the

evidence proffered by the Alliance was cumulative of what the record in D.P.U. 10-54 already contained. See *Sudbury* v. *Department of Pub. Utils.*, 351 Mass. 214, 219-220 (1966) ("the department has a wide discretion in ruling on evidence [and] may exclude unduly repetitious evidence"). The Alliance argues that the NSTAR filings contain "previously unknown or undisclosed" information relating to the price disparities between Cape Wind and other, including out-of-State, renewable energy resources. This information, according to the Alliance, would have a significant impact on the department's decision to approve PPA-1 in D.P.U. 10-54, because information demonstrating there is an adequate supply of alternative renewable energy sources at prices well below that of Cape Wind directly cuts against the department's finding that Cape Wind is cost effective. The record in D.P.U. 10-54, however, already did include evidence relating to the pricing of other available renewable energy resources located both outside and within the Commonwealth.[10],[11] The department did not abuse its broad discretion in declining to reopen a closed record in a completed pro-

[10]The record in this case does not contain the department's final order and related documentary evidence in D.P.U. 10-54. Nevertheless, that record is before this court in *Alliance III, supra,* and we have reviewed it in that context.

[11]The Alliance asserts that apart from addressing the issue of actual cost, the proffered evidence from the NSTAR filings would have shown that the department, in determining that the contract was cost effective, had erroneously and seriously overstated the value of the unquantified benefits (e.g., size, capacity factor, location, and stage of development) associated with PPA-1. Specifically, the Alliance argues that in comparison with the NSTAR contracts, PPA-1 offered relatively weak unquantified benefits to National Grid's ratepayers. Our ability to consider this argument is essentially precluded by the fact that the NSTAR filings are not part of the department's certified record in this case. In reviewing the department's decision, we are confined to the administrative record certified by the agency. See G. L. c. 25, § 5 ("No evidence beyond that contained in the record shall be introduced before the court . . ."). Cf. *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Comm'n*, 394 Mass. 233, 234 n.3 (1985) (review of administrative decision under G. L. c. 30A, § 14, generally confined to agency record). The Alliance's inclusion of the three NSTAR filings in its record appendix on appeal does not suffice to place them in the record. To the extent the Alliance describes in its brief the unquantified benefits associated with the NSTAR contracts, the description is fairly conclusory and does not persuade us that the department erred in determining that the information contained in the NSTAR filings would be cumulative. Even a brief review of the record in D.P.U. 10-54 reveals exhibits and testimony

ceeding in order to accept more information on the same points. See *Alliance I*, 448 Mass. at 50 n.6.

3. *Conclusion.* The case is remanded to the county court, where the decision of the department denying the motion to reopen the record in D.P.U. 10-54 is to be affirmed.

*So ordered.*

that address issues such as capacity factor, location, and related transmission costs in connection with renewable energy projects in the New England and New York areas.