466 Mass. 381 (2013)                                          381

Soe, Sex Offender Registry Board No. 252997 v. Sex Offender Registry Board.

JOHN SOE, SEX OFFENDER REGISTRY BOARD No. 252997 *vs.*
SEX OFFENDER REGISTRY BOARD.

Plymouth. May 7, 2013. - September 11, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act.
Constitutional Law,* Sex offender, Self-incrimination. *Due Process of Law,*
Sex offender, Continuance. *Evidence,* Sex offender, Acquittal in prior
criminal trial. *Practice, Civil,* Sex offender, Continuance. *Administrative
Law,* Agency's authority.

This court concluded that where a sex offender moves to continue his clas-
sification hearing until his pending sexual offense criminal charges are
adjudicated, the Sex Offender Registry Board should examine the particular
circumstances and determine whether the public safety interest in obtaining
a prompt final classification outweighs the sex offender's interest in being
able vigorously to challenge the untried allegations at the hearing without
potentially compromising his criminal trial strategy, and the public interest
in diminishing the risk of an inaccurate classification. [387-391]
The Sex Offender Registry Board did not abuse its discretion in denying the
plaintiff's motion to continue his classification hearing until pending sex
offense criminal charges against him had been resolved, where the board
properly decided that its interest in protecting the public from a convicted
sex offender who had been initially classified as a level three sex offender
during the indeterminate amount of time when the plaintiff's criminal of-
fense was pending outweighed the plaintiff's interest in avoiding the dif-
ficult strategic choice of vigorously defending himself at the classification
hearing or holding back until his subsequent criminal trial. [391-393]
This court concluded that the Sex Offender Registry Board (board) has the
inherent authority, in its discretion, to reconsider a classification decision
where the board determines that the classification may have rested on
perjured or otherwise erroneous or inaccurate evidence, regardless of
whether the sex offender is eligible to move for reclassification on the
ground that his degree of dangerousness has diminished over time under
803 Code Mass. Regs. § 1.37C(2) (2004), e.g., such circumstances as
where untried sexual offense allegations relied on by the hearing examiner
were proven false or baseless at a subsequent criminal trial. [393-397]

CIVIL ACTION commenced in the Superior Court Department on
April 22, 2010.

The case was heard by *Robert C. Cosgrove,* J., on a motion
for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Ethan C. Stiles* for the plaintiff.

*William H. Burke* for the defendant.

*Brandon L. Campbell*, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

GANTS, J. The plaintiff appeals from the decision of a Superior Court judge affirming his classification as a level three sex offender by the Sex Offender Registry Board (board). The plaintiff is a "sex offender" as defined in G. L. c. 6, § 178C, as a result of his convictions on June 17, 2009, of indecent assault and battery on a person over fourteen, in violation of G. L. c. 265, § 13H, and therefore he is subject to classification by the board. At the time of his classification hearing, the plaintiff was awaiting trial on charges that he had repeatedly sexually assaulted his young stepdaughter. The police reports setting forth the stepdaughter's allegations and the consequent police investigation were admitted in evidence at the classification hearing. On appeal, the plaintiff contends that the board committed an error of law and abused its discretion in denying his motion to continue the classification hearing until his pending criminal case was "resolved" without balancing "the plaintiff's due process interest in preparing his defense" in the criminal case "against [the board's] interest in protecting the public." Alternatively, the plaintiff argues that because the hearing examiner relied on the untried allegations of sexual assault in classifying him as a level three sex offender, "public policy demands reconsideration" of his classification where he was later found not guilty of the sexual offenses at his criminal trial.

We recognize that a sex offender who has been convicted of one or more sex offenses but who is awaiting trial on separate sexual offense charges is confronted with a difficult dilemma where a classification hearing is held before the criminal trial and the board's attorney intends to offer evidence of the alleged sexual incidents: the sex offender can offer evidence of his innocence and potentially reveal his defense strategy at the criminal trial, or he can decide not to present evidence of his innocence and forgo the opportunity to persuade the hearing examiner that he did not commit the alleged sexual incidents. We hold that

where a sex offender moves to continue his classification hearing until his pending sexual offense charges are adjudicated, the board should examine the particular circumstances and determine whether the public safety interest in obtaining a prompt final classification of the sex offender outweighs the sex offender's interest in being able vigorously to challenge the untried allegations at the hearing without potentially compromising his criminal trial strategy, and the public interest in diminishing the risk of an inaccurate classification. We conclude that the board did not abuse its discretion in balancing these interests in this case.

We also hold that the board has the inherent authority, in its discretion, to reconsider a classification decision where the board determines that the classification may have rested on perjured or otherwise erroneous or inaccurate evidence, regardless of whether the sex offender is eligible to move for reclassification on the ground that his degree of dangerousness has diminished over time under 803 Code Mass. Regs. § 1.37C(2) (2004). We recognize that one such circumstance that may trigger the board's exercise of this inherent authority is the revelation at a subsequent criminal trial that untried sexual offense allegations relied on by the hearing examiner were proven to be false or baseless. But we also recognize that an acquittal on such charges demonstrates only that the Commonwealth failed to prove the defendant guilty beyond a reasonable doubt, and is insufficient alone to show that the allegations were false or baseless. Where the plaintiff has not yet requested the board to reconsider his classification level pursuant to this inherent authority, we express no opinion regarding the merits of such a request. Therefore, we affirm the board's classification of the plaintiff as a level three sex offender.[1]

*Background.* According to a police report, on July 7, 2008, the plaintiff's eleven year old stepdaughter described to a child interview specialist of the Sexual Assault Investigation Network (SAIN) that the plaintiff had engaged in sexual conduct with her on numerous occasions since she was four years old. On August 28, 2008, based on these alleged instances of sexual misconduct, the plaintiff was arraigned in District Court on charges of rape of a child under sixteen with force, in violation

---

[1]We recognize the amicus brief of the Committee for Public Counsel Services.

of G. L. c. 265, § 22A; assault of a child with intent to commit rape, in violation of G. L. c. 265, § 24B; indecent assault and battery on a child under fourteen, in violation of G. L. c. 265, § 13B; and open and gross lewdness, in violation of G. L. c. 272, § 16. The plaintiff was subsequently indicted on these charges in Superior Court on January 13, 2009, and the District Court charges were dismissed.

On October 9, 2008, while released on bail pending trial on these charges, the plaintiff sexually assaulted his friend's sixteen year old daughter (victim) on four occasions while he was a guest at her father's house, each assault occurring between twenty and thirty minutes apart. First, while in the kitchen, the plaintiff told the victim, "You have a nice butt," and then pressed his groin against her three times. Second, approximately twenty-five minutes later, the plaintiff entered the victim's bedroom and rubbed his hand on her hip and buttocks over a blanket covering her. Third, twenty minutes later, he again entered the victim's bedroom and said, "Shouldn't you be wearing less clothing?" He then placed his hand into her pajama top and underneath her bra, touched her breast, and said, "Will you scream if I do that?" Finally, twenty minutes later, the plaintiff returned to the victim's bedroom and again rubbed her hips and buttocks.

The plaintiff was charged in District Court with four counts of indecent assault and battery on a person over fourteen, in violation of G. L. c. 265, § 13H, and he pleaded guilty to these charges on June 17, 2009, while still awaiting trial for the alleged crimes against his stepdaughter. He was sentenced to concurrent two-year "split" terms in the house of correction, with nine months to serve, which were deemed served, and the balance suspended with probation until June 16, 2011.[2]

As a result of these convictions, on October 27, 2009, the board notified the plaintiff of his duty to register as a sex offender, and of its preliminary classification of him as a level three sex offender. The plaintiff then requested an administra-

---

[2]As conditions of probation, the plaintiff was ordered to stay away from the victim, have no contact with children under the age of sixteen, submit to mental health evaluation and counselling, and be monitored by a global positioning system device.

tive review of the board's classification decision pursuant to G. L. c. 6, § 178L.

Before the scheduled hearing date of March 29, 2010, the plaintiff filed a motion to continue the final classification hearing until the pending criminal case regarding his stepdaughter's allegations was "resolved."[3] In his motion, the plaintiff asserted that, if he were to have his final classification hearing before his criminal trial, he would be "highly prejudiced" because he would "be unable to testify on his own behalf at the hearing," lest he subject himself "to being questioned about the pending charges on cross examination," and he "must remain silent as to the defense he [would] pursue at trial and the lines of attack on the credibility of the complainant and other witnesses" in order to "not deprive himself a full and fair trial on the indictments." The plaintiff claimed that these constraints would "prevent him from fully confronting the allegations contained in the police reports" regarding these untried allegations and would therefore deprive him of "the ability to fully confront the evidence being used against him [in] the classification proceeding."

The board denied the motion to continue the classification hearing, noting that there was "no requirement that the [b]oard wait until disposition of the [plaintiff's] current pending charges to conduct a hearing," and finding that, in view of the plaintiff's preliminary classification as a level three sex offender, "a continuance in this matter [might] create a potential risk to public safety."

Among the evidence offered by the board at the hearing on March 29, 2010, was a police report summarizing the stepdaughter's SAIN interview, which alleged that the plaintiff on multiple occasions had sexually assaulted his stepdaughter over a period of at least six years beginning when she was four years old, and that the plaintiff would look at "girls" on the computer "who were showing their butt crack." The board also offered in evidence a police report regarding a search of the hard drive of the computer in the plaintiff's home that revealed "adult

[3]The plaintiff noted that the criminal trial was scheduled to commence on April 20, 2010. In fact, as a result of subsequent continuances, the trial did not commence until March 29, 2011.

pornography" located in the "dad" user folder.[4] Although the plaintiff was given an opportunity to testify and present evidence at the classification hearing, the plaintiff's attorney, in his opening statement, told the hearing examiner that the plaintiff's criminal trial counsel was "very carefully" guarding the plaintiff's rights under the Fifth Amendment to the United States Constitution and that the plaintiff was "not able to testify" at the hearing or "to present evidence in his own defense."

In a decision issued on April 14, 2010, the hearing examiner found that the plaintiff "present[ed] a high risk to re-offend and [a] high degree of dangerousness," and ordered the plaintiff to register as a level three sex offender. The hearing examiner noted that she was "[m]indful that [the plaintiff] ha[d] not been convicted of sexually abusing [his stepdaughter] as of the date of th[e] hearing," but she found that the police reports were "sufficiently detailed to find by a preponderance of the evidence that [the plaintiff] sexually offended against his stepdaughter consistent with the elements of the crimes for which he was charged." She also declared that she would have reached the same conclusion even if she had not considered these allegations, finding "quite disturbing" that "while out on bail for sexual assault allegations brought by his stepdaughter, [the plaintiff] repeatedly sexually assaulted a [sixteen]-year-old extrafamilial victim."

On March 31, 2011, close to one year after the plaintiff's final classification by the board, a Superior Court jury found the plaintiff not guilty of all of the charges alleging misconduct against his stepdaughter, except the charge of open and gross lewdness in violation of G. L. c. 272, § 16, for which conviction he was sentenced to two years in a house of correction.[5]

---

[4]The plaintiff filed a motion to exclude any evidence of the alleged sexual misconduct against his stepdaughter that formed the basis for the pending criminal charges. The plaintiff argued that, as a matter of law, evidence of alleged criminal conduct that has not resulted in a conviction is inadmissible at a classification hearing; and that, even if such evidence were potentially admissible, the evidence regarding these allegations should not be admitted because it lacked the requisite indicia of reliability. The hearing examiner denied the motion. We conclude that she did not err in admitting this evidence. See *infra*.

[5]Only a second adjudication or conviction of open and gross lewdness in violation of G. L. c. 272, § 16, constitutes a "sex offense" as defined in G. L. c. 6, § 178C.

The plaintiff sought review of his final classification in Superior Court pursuant to G. L. c. 6, § 178M,[6] and a judge in the Superior Court affirmed the board's decision. The plaintiff appealed, and we transferred his appeal to this court on our own motion.

*Discussion.* 1. *Denial of a continuance.* Where a classification hearing is scheduled when a sex offender is awaiting trial on other sex offense charges, the hearing examiner may consider the facts underlying the alleged sex offenses if proved by a preponderance of the evidence, at a minimum, as evidence relevant to "whether the sex offender's conduct is characterized by repetitive and compulsive behavior." G. L. c. 6, § 178K (1) (*a*) (ii). See *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd.*, 452 Mass. 764, 777 (2008) (hearing examiner may not consider offense resulting in continuance without a finding [CWOF] as " 'prior offense' in relation to the classification factor that looks at the dates, number, and nature of prior offenses, [but] is permitted to take into account the misconduct underlying the CWOF on the issue whether the sex offender's conduct was repetitive and compulsive").[7] A sex offender at a classification hearing has the right to testify, to offer evidence, and to challenge through cross-examination or other means the board's evidence regarding these alleged other sex offenses, as well as any other evidence of his sexual dangerousness offered by the board. See G. L. c. 6, § 178L (2); 803 Code Mass. Regs. §§ 1.17-1.21 (2002). But in circumstances like those presented in this case, the offender's exercise of these rights pragmatically is burdened by the danger that, were he to fully exercise them, he may increase the likelihood that he will be convicted of these sex offenses at his criminal trial by incriminating himself, by subjecting himself to cross-examination,

---

[6]General Laws c. 6, § 178M, provides in relevant part: "An offender may seek judicial review, in accordance with [G. L. c. 30A, § 14], of the board's final classification and registration requirements."

[7]The hearing examiner may not consider the alleged sex offense charges as evidence of "the number, date and nature of prior offenses," G. L. c. 6, § 178K (1) (*b*) (iii), because a prior offense is defined in the regulations as "a conviction or adjudication for any sex offense, or, a conviction or adjudication for any offense that results in the offender serving a period of confinement that exceeds [sixty] days." 803 Code Mass. Regs. § 1.40 (9) (2002).

or by revealing the defense strategy he intends to employ at his subsequent criminal trial. See *Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012) (*Louis Vuitton*), quoting A. Hellerstein & G. Naftalis, Private Civil Actions and Concurrent or Subsequent Regulatory or Criminal Proceedings, SG046 ALI-ABA 903, 905 (2001) ("greatest risk posed by parallel [civil and criminal proceedings] . . . is that parallel proceedings may place significant burdens upon the Fifth Amendment privilege against self-incrimination"). Yet, if he were not to fully and vigorously exercise these rights, he would leave at least partially unchallenged the evidence offered by the board regarding these alleged sex offenses even where its accuracy could be disputed and thereby potentially increase the risk that he will be found a level three sex offender. See *Hoover* v. *Knight*, 678 F.2d 578, 581 (5th Cir. Unit B 1982), quoting *United States* v. *White*, 589 F.2d 1283, 1286 (5th Cir. 1979) (where criminal defendant is forced "to choose between preserving his [F]ifth [A]mendment privilege and losing [a parallel] civil suit . . . he may have been denied his most effective defense by remaining silent").

The burden placed on the exercise of these rights by this strategic dilemma does not alone constitute a denial of due process under the United States Constitution. Numerous Federal courts have recognized that there is some unfairness in requiring a civil hearing to proceed while criminal charges relevant to that civil proceeding are pending, but have nonetheless held that the decision whether to continue such a civil hearing is in the discretion of the presiding officer or judge, and that the United States Constitution "rarely, if ever," requires a stay of civil proceedings pending the outcome of criminal proceedings. *Louis Vuitton, supra* at 98. See *Afro-Lecon, Inc.* v. *United States*, 820 F.2d 1198, 1202 (Fed. Cir. 1987) ("Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings"); *Gabrilowitz* v. *Newman*, 582 F.2d 100, 104 (1st Cir. 1978), quoting *McGautha* v. *California*, 402 U.S. 183, 213 (1971) ("Although the choice facing him is difficult, that does not make it unconstitutional. . . . 'The criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to fol-

low' "); *Arthurs* v. *Stern*, 560 F.2d 477, 478-479 (1st Cir. 1977), cert. denied, 434 U.S. 1034 (1978) ("Nor is there anything inherently repugnant to due process in requiring the [plaintiff] to choose between giving testimony at the disciplinary hearing [before the Board of Registration and Discipline in Medicine], a course that may help the criminal prosecutors, and keeping silent, a course that may lead to the loss of his license"). See also *United States* v. *Kordel*, 397 U.S. 1, 11-12 (1970) ("It would stultify enforcement of federal law to require a governmental agency . . . to defer civil proceedings pending the ultimate outcome of a criminal trial," but recognizing that "[w]e do not deal here with a case where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution; nor with a case where the defendant is without counsel or reasonably fears prejudice from adverse pretrial publicity or other unfair injury; nor with any other special circumstances that might suggest the unconstitutionality or even the impropriety of this criminal prosecution").[8],[9]

Nor does the burden placed on the exercise of these rights by

[8]A Federal due process violation does not result from the denial of a stay of civil proceedings until the resolution of a criminal case against a defendant even where the court or administrative agency in the civil proceeding makes an adverse inference from the refusal of the defendant to testify in the civil proceeding. See *Baxter* v. *Palmigiano*, 425 U.S. 308, 318 (1976) (prison disciplinary board may consider accused inmate's silence even when caused by fear of use of his testimony in related criminal prosecution); *Keating* v. *Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir.), cert. denied, 526 U.S. 827 (1995) ("Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding"). We need not consider here whether reliance on any such adverse inference in these circumstances would violate due process under the Massachusetts Constitution in a classification hearing because there is nothing in the board's decision to suggest that such an inference was made from the plaintiff's choice not to testify or offer evidence on his own behalf.

[9]The plaintiff notes that the United States Court of Appeals for the District of Columbia announced in 1955 that "due process is not observed if an accused person is subjected, without his consent, to an administrative hearing on a serious criminal charge that is pending against him." *Silver* v. *McCamey*, 221 F.2d 873, 874-875 (1955). However, in 1980, the same court announced that "cases decided since *Silver* have established that, as a general matter, due

this strategic dilemma alone constitute a denial of due process under the Massachusetts Declaration of Rights. See *Oznemoc, Inc.* v. *Alcoholic Beverages Control Comm'n,* 412 Mass. 100, 105-106 (1992), and cases cited ("Courts generally reject claims by parties to administrative proceedings that they are entitled to continuances until after their criminal trials because they will not testify for fear of self-incrimination"). In the context of probation revocation, this court has explicitly held:

> "If the act alleged to be a violation of probation is made the subject of a criminal complaint, the commencement of the criminal prosecution does not preclude the revocation of the earlier probation nor does it require that the revocation proceedings be deferred until the completion of the new criminal proceeding."

*Rubera* v. *Commonwealth,* 371 Mass. 177, 181 (1976), and cases cited. See *Commonwealth* v. *Milton,* 427 Mass. 18, 21 (1998) ("probation department may commence a probation surrender hearing immediately after an indictment is returned against a defendant who is on probation"). Similarly, in the context of civil hearings considering parental custody, the Appeals Court has held that the decision whether to stay the civil proceeding in light of pending criminal charges is "addressed to [the judge's] discretion," and that a judge does not abuse his or her discretion in denying such a request where "the [plaintiff] had an opportunity to be heard at a meaningful time and in a meaningful manner." *Care & Protection of Quinn,* 54 Mass. App. Ct. 117, 121-122 (2002) (plaintiff "was entitled not to avail himself of that opportunity, but was not . . . entitled to have the judge accommodate both his desire to testify and his desire to remain silent"). In the context of prison disciplinary hearings, we have held that there was "no constitutional violation in holding [prison] disciplinary proceedings while the district attorney was investigating the crime, even though as a result each inmate chose not to testify." *Murphy* v. *Superintendent, Mass.*

process is not infringed merely because" such an administrative hearing is held, even without consent, in advance of the pending criminal trial. *Securities & Exch. Comm'n* v. *Dresser Indus., Inc.,* 628 F.2d 1368, 1376 n.21 (D.C. Cir.), cert. denied, 449 U.S. 993 (1980).

*Correctional Inst., Cedar Junction,* 396 Mass. 830, 834 (1986). Although there are undoubtedly material differences between probation revocation hearings, parental rights determinations, and prison disciplinary proceedings on the one hand, and sex offender classification hearings on the other, they all involve adjudications that may rest on findings regarding a litigant's alleged and untried prior criminal conduct that will have a profound impact on an individual's life or liberty.

Although a sex offender has no due process right to the continuance of his classification hearing until the adjudication of criminal charges pending against him, given the weighty interests at stake, the board must exercise its sound discretion in balancing the public safety interest in promptly obtaining a final classification of such a sex offender with the potential harm to the sex offender "if he is compelled to choose between defending the civil action and protecting himself from criminal prosecution." *Oznemoc, Inc.* v. *Alcoholic Beverages Control Comm'n, supra* at 106, quoting *Wansong* v. *Wansong,* 395 Mass. 154, 157 (1985). See *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.,* 447 Mass. 768, 776 (2006) ("plaintiff's interests must, with appropriate safeguards, be weighed against the board's interest in protecting the public"). In weighing these interests, the board should consider that both the public and a sex offender have a substantial interest in assuring the accuracy of the offender's classification because the classification level will determine the degree of access the public will have to the offender's registration information. See G. L. c. 6, § 178K (2). See also *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd., supra* at 775-776 (plaintiff's interest in sex offender classification "is weighty"); *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.,* 428 Mass. 90, 103 (1998) ("State's interest here is to protect children and other vulnerable people from recidivistic sex offenders"); *id.* at 107 (Marshall, J., concurring in part and dissenting in part) ("State has no interest in making erroneous classifications").

The person seeking a continuance or a stay of proceedings "bears the burden of establishing its need." *Louis Vuitton, supra* at 97, quoting *Clinton* v. *Jones,* 520 U.S. 681, 708 (1997).

The decision whether to grant the continuance or stay "ultimately requires and must rest upon 'a particularized inquiry into the circumstances of, and the competing interests in, the case.' " *Louis Vuitton, supra* at 99-100, quoting *Banks* v. *Yokemick*, 144 F. Supp. 2d 272, 275 (S.D.N.Y. 2001). We review the denial of a continuance or a stay for abuse of discretion. See *Ott* v. *Board of Registration in Medicine*, 276 Mass. 566, 574 (1931) ("Whether a continuance ought to be granted commonly rests in the discretion of the trial tribunal"). See also *Arthurs* v. *Stern*, 560 F.2d 477, 479-480 (1st Cir. 1977) (noting "power of federal courts, after a balancing of interests in the particular case before them, to stay civil suits because of pending criminal charges," and affirming that "denial is reviewed simply for abuse of discretion"). Here, while we would have preferred that the board provide greater detail demonstrating its particularized balancing of these competing interests, we conclude that the board did not abuse its discretion in denying the plaintiff's motion to continue the classification hearing.

The plaintiff had been initially classified as a level three sex offender, representing an initial determination by the board that the plaintiff's "risk of reoffense [was] high and the degree of dangerousness posed to the public [was] such that a substantial public safety interest [was] served by active dissemination" of his registration information. G. L. c. 6, § 178K (2) (c). See 803 Code Mass. Regs. § 1.38(1) (2004). But any such public dissemination had to await the board's final classification. 803 Code Mass. Regs. § 1.04(4) (2004). In denying the plaintiff's motion for a continuance, the board reasonably recognized that postponement of the classification hearing until the resolution of the plaintiff's criminal case might adversely affect a substantial public safety interest if the plaintiff ultimately was determined to be a level three sex offender and active dissemination had been postponed. While the criminal trial was scheduled to commence only twenty-two days after the scheduled hearing date, "[g]iven the unhappy vagaries which sometimes accompany the criminal process, the [board] could by no means be certain that the [plaintiff's] criminal case would conclude within a reasonable period of time." *Care & Protection of Quinn, supra* at 122.

466 Mass. 381 (2013)                                    393

Soe, Sex Offender Registry Board No. 252997 *v.* Sex Offender Registry Board.

In fact, the criminal trial did not proceed on that scheduled date or numerous subsequent scheduled dates, and did not conclude until March 31, 2011, more than one year after the classification hearing. Therefore, although we recognize that the board's denial of the motion to continue may have resulted in the plaintiff choosing not to challenge at his classification hearing the allegations made by his stepdaughter of repeated sexual assaults, and that this denial may have thereby deprived the hearing examiner of information that may have aided her evaluation of the plaintiff's sexual dangerousness, we conclude that the board did not abuse its discretion in deciding that its interest in protecting the public from a convicted sex offender who had been initially classified as a level three offender during the indeterminate amount of time when the plaintiff's criminal case was pending outweighed the plaintiff's interest in avoiding the difficult strategic choice of vigorously defending himself at the classification hearing or holding back until his subsequent criminal trial.

2. *Effect of subsequent acquittal of sex offense charges.* The plaintiff additionally argues on appeal that, because the board relied on untried sex offense allegations by his stepdaughter in categorizing him as a level three sex offender, "public policy demands" that the board reconsider his classification level where he was later found not guilty of those sex offense charges.[10]

Under 803 Code Mass. Regs. § 1.37C(2)(a) (2004), "a sex offender finally classified as a [l]evel [two] or [three] sex offender may file a written motion with the [b]oard to re-examine his classification level." "[T]he sex offender's motion for reclassification shall . . . provide proof, by a [p]reponderance of the [e]vidence, that his risk of reoffense and the degree of dangerousness he poses to the public has been reduced through new

---

[10]The board argues that this issue was waived by the plaintiff when he failed to raise it before the hearing examiner. This cannot be the case, as the plaintiff's argument on appeal is not that the board erred by considering the facts underlying the plaintiff's pending criminal charges, but that his subsequent acquittal on those charges requires reconsideration of his classification level. Since the plaintiff could not have raised this argument until after his acquittal, it was not waived for failure to raise it before the hearing examiner. See *Albert* v. *Municipal Court of Boston*, 388 Mass. 491, 493 (1983) ("party is not entitled to raise arguments on appeal that he *could have raised,* but did not raise, before the administrative agency" [emphasis added]).

and updated information" on various factors relevant to classification.[11] 803 Code Mass. Regs. § 1.37C(2)(e) (2004). "Consideration of motions for reclassification shall be limited to new and updated information not available at the time of the original classification . . . ." 803 Code Mass. Regs. § 1.37C(2)(c) (2004). A sex offender, however, may not request reevaluation of his classification level under these regulations until at least "three years from the date of his [f]inal [c]lassification," 803 Code Mass. Regs. § 1.37C(2)(a), and the motion must include proof that he "has, since release from incarceration, remained at liberty for more than five continuous years," 803 Code Mass. Regs. § 1.37C(2)(d) (2004). These passage of time requirements, viewed in the context of the regulation, suggest that the motion for reclassification authorized under 803 Code Mass. Regs. § 1.37C(2) is limited to claims based on "new and updated information," 803 Code Mass. Regs. § 1.37C(2)(e), that the sex offender's risk to reoffend and his degree of dangerousness are demonstrably less than they were at the time of the offender's classification hearing because of changes in circumstances that have occurred over at least three years. See *Doe, Sex Offender Registry Bd. No. 16748* v. *Sex Offender Registry Bd.*, 82 Mass. App. Ct. 152, 162 n.11 (2012) (regulatory authority in 803 Code Mass. Regs. § 1.37C[2] "provides the sole mechanism for protection of an offender's constitutionally based rights where the passage of time has reduced the risk of dangerousness such that the Commonwealth's interest in disclosure is eroded, properly permitting him to obtain a lower classification level").

The Legislature has enacted no statute, and the board has promulgated no regulation, that allows a sex offender, once his classification has become final, to move for reconsideration of his classification level based on a claim that the board, in

---

[11]Title 803 Code Mass. Regs. § 1.37C(2)(e) (2004) provides that "new and updated information on the following [f]actors" should be addressed in an offender's motion for reclassification: 1. "his response to completion of sex offender treatment"; 2. "current home situation"; 3. "physical condition"; 4. "any new psychological or psychiatric profiles indicating his risk to reoffend"; 5. "absence of alcohol and drug abuse while at liberty"; 6. "recent behavior"; 7. "updated victim impact statement"; and 8. "new or updated materials submitted by the sex offender."

determining his classification, substantially relied on evidence that was later demonstrated to be false, whether because of good faith errors or knowingly false statements, such that his classification constituted a miscarriage of justice. Such a miscarriage may occur where the board relied on allegations of sexual offenses by a complainant that the complainant later credibly admits were false, or that were demonstrated to be false from subsequent investigation or at trial. Or it may occur where the board relied on forensic evidence that appeared to implicate the sex offender in a prior sexual offense and the accuracy or reliability of that evidence was later completely discredited. In such cases, the sex offender's claim is not that he has become less sexually dangerous since his classification hearing because of a change in circumstances over the past three years, but that he was less sexually dangerous than his classification level reflected at the time of the hearing because the hearing examiner rested the classification decision on evidence that subsequently was affirmatively shown to be erroneous.

The absence of statutory or regulatory authority, however, does not mean that the board is powerless to prevent or mitigate such a demonstrated miscarriage of justice. An administrative agency, in the absence of statutory limitations, generally has the inherent authority to reconsider a decision or reopen a proceeding to prevent or mitigate a miscarriage of justice. *Moe* v. *Sex Offender Registry Bd.*, 444 Mass. 1009, 1009 (2005) ("In the absence of statutory limitations, administrative agencies generally retain inherent authority to reconsider their decisions"). See *Covell* v. *Department of Social Servs.*, 42 Mass. App. Ct. 427, 433 (1997), citing *Aronson* v. *Brookline Rent Control Bd.*, 19 Mass. App. Ct. 700, 703-706 (1985) ("agencies have inherent power to reopen their concluded proceedings in compelling situations as justice may require"); *Stowe* v. *Bologna*, 32 Mass. App. Ct. 612, 615 (1992), *S.C.*, 415 Mass. 20 (1993). Cf. *Commonwealth* v. *Charles*, ante 63, 72-73 (2013) (inherent power of courts to prevent or mitigate miscarriage of justice). Although this power "must be sparingly used if administrative decisions are to have resolving force on which persons can rely," *Stowe* v. *Bologna*, *supra* at 616, and the "mere availability of additional evidence is insufficient" for its use, *Alliance to Protect Nantucket*

*Sound, Inc.* v. *Department of Pub. Utils. (No. 2)*, 461 Mass. 190, 195 (2011), if the evidence the board substantially relied on in reaching its final classification decision were subsequently demonstrated to be false, inaccurate, or utterly unreliable, the board would retain the discretion to exercise this inherent authority to prevent or mitigate a miscarriage of justice.

This authority may be invoked by motion of a sex offender or by the board's own motion, but the exercise of such authority rests in the sound discretion of the board, reviewable only for an abuse of discretion. See *Box Pond Ass'n* v. *Energy Facilities Siting Bd.*, 435 Mass. 408, 420 (2001) ("agency's refusal to reopen is not disturbed absent an abuse of . . . discretion"); *Zachs* v. *Department of Pub. Utils.*, 406 Mass. 217, 227 (1989) ("administrative agencies have broad discretion over procedural aspects of matters before them," including "decision whether to reopen [closed] hearings"). We recognize that, where evidence was offered at a classification hearing of untried sex offenses, a subsequent acquittal of those charges alone does not suffice to demonstrate that the classification hearing should be reopened or the decision reconsidered. A hearing examiner may credit evidence of the facts underlying untried sex offense charges at a classification hearing where such facts are proven by a preponderance of evidence. See *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 103-104 (1998) ("preponderance of the evidence standard, combined with a requirement that the fact finder make detailed findings to demonstrate that close attention has been given to the evidence and that the appropriateness of the classification has been shown," is standard that must be met in board classification decisions). An acquittal at a criminal trial simply means that a jury did not find the defendant guilty of the charged sex offense beyond a reasonable doubt; it does not demonstrate that the evidence at the classification hearing did not warrant a finding by a preponderance of the evidence that the sex offender committed the charged offense. Cf. *Commonwealth* v. *Holmgren*, 421 Mass. 224, 225-227 (1995) (because burden of proof in probation revocation proceedings is "proof by a preponderance of the evidence," even where individual has already been acquitted of crime, "[p]rinciples of collateral estoppel do not bar the

Commonwealth from revoking probation based on evidence of a violation of law of which a probationer has been found not guilty"). To justify this form of reconsideration or reopening of the classification hearing, a sex offender must demonstrate that the board substantially relied on evidence that was later affirmatively demonstrated to be erroneous in determining his classification level, and that the board would have decided on a lower classification level had it known the truth at the time of the hearing.

Although the plaintiff on appeal claims that he is entitled to reconsideration of his classification level by the board, he has not yet formally moved for such reconsideration, perhaps because he believed that such a motion would be futile in light of the three-year passage of time requirement imposed under 803 Code Mass. Regs. § 1.37C(2)(a). Because the plaintiff has yet to ask the board to exercise its inherent authority, we do not address the merits of any such motion. Therefore, our affirmance of the board's final classification should have no bearing on the board's decision whether to exercise its inherent authority to reconsider the plaintiff's classification level or to reopen the plaintiff's previous classification hearing.[12]

*Conclusion.* We affirm the judgment of the Superior Court affirming the board's final classification of the plaintiff as a level three sex offender.

*So ordered.*

---

[12]We find no merit to the plaintiff's argument that his acquittal of the sex offenses should have resulted in the automatic sealing of the records of his criminal trial under G. L. c. 276, § 100C, as amended through St. 1984, c. 123. Section 100C has been held unconstitutional as applied to the records of criminal cases ending in a not guilty finding. *Globe Newspaper Co.* v. *Pokaski*, 868 F.2d 497, 506-509 (1st Cir. 1989). A defendant who wishes permanently to seal the court's records following his acquittal must file a motion at the conclusion of the trial, and "[i]n most cases, we expect that defendants who request the sealing of records will be unable to make out even a prima facie case for sealing." *Id.* at 507. See *Commonwealth* v. *Doe*, 420 Mass. 142, 149-153 (1995). Here, there is no evidence either that the plaintiff has requested that the records of his criminal trial for the charged offenses against his stepdaughter be sealed, or that a judge has concluded that sealing such records is appropriate.