The plaintiff, John Doe, appeals from a Superior Court judgment upholding, on judicial review under G. L. c. 6, § 178M, and G. L. c. 30A, § 14, an adjudicatory decision of the Sex Offender Registry Board (board) reclassifying Doe from a level two to a level three sex offender. Doe argues that the board's hearing examiner erred or abused his discretion (1) in denying Doe's motion for funds to retain an expert witness to assist at the hearing; (2) in relying on hearsay in a 2002 police report concerning Doe's conduct, where the resulting charges were later resolved in Doe's favor; and (3) in giving insufficient weight to certain scholarly articles concerning sex offender recidivism that Doe submitted at the board hearing. We affirm.
Background. In 1993, at the age of seventeen, Doe admitted to sufficient facts and was convicted on one count each of unnatural and lascivious acts with a child under sixteen and indecent assault and battery on a child under fourteen. The victim was Doe's five year old nephew, whom he had been babysitting. As a result, in 2002, the board classified Doe as a level two offender.
The board later learned that in 2002, Doe had been charged with (but not convicted of) three child pornography offenses involving a female victim, and that in 2006, Doe had pleaded guilty to seven counts of rape and abuse of a child, involving both male and female victims. The board initiated a proceeding to reclassify Doe as a level three offender. Due to Doe's incarceration, and then the decision in Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 309-311 (2015) (Doe No. 380316 ) (requiring board to apply clear and convincing evidence standard in classifying offenders), the reclassification hearing did not occur until 2016. Doe was given a level three classification, and these judicial review proceedings followed.
1. Expert funds. Before the hearing, Doe moved for funds to retain an expert, on the grounds that Doe had been a juvenile at the time of his first offense and that he had a significant mental health history. An offender seeking such funds has the burden of showing a need for expert testimony on an issue that is particular to him, is not a matter of common knowledge or experience, and has a bearing on his classification. Doe, Sex Offender Registry Bd. No. 89230 v. Sex Offender Registry Bd., 452 Mass. 764, 775 (2008). In considering the need for an expert, it bears mention that the board's detailed classification regulations are imbued with the board's expertise and that the examiner must be guided by those regulations in classifying individual offenders. Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 786 (2006).
The hearing examiner denied the motion for funds, and in light of the above principles, we see no abuse of discretion in that ruling. First, the examiner reasoned that the significance of having been a juvenile at the time of one's first offense is fully addressed in the board's classification regulations, 803 Code Mass. Regs. § 1.33 (2016), and Doe had not shown that expert testimony on this issue would be anything but duplicative.[2] Second, as to Doe's mental health, the hearing examiner observed that the sole mental health evidence Doe submitted in support of his motion for funds-a 1993 sentencing evaluation-concluded that Doe did not at that time "meet the regulatory standard for mental illness." That material predated the hearing by twenty-three years, and the hearing examiner did not rely, in his classification decision, on Doe having any "mental abnormality," as defined in the board's classification regulations, 803 Code Mass. Regs. § 1.33(1), that would increase his risk of recidivism.[3] No expert on Doe's mental health was required.
2. Hearsay in police report. Doe challenges the hearing examiner's consideration of statements in a police report, where the resulting charges were resolved in Doe's favor. The report detailed allegations that, in 2002, Doe had coerced a sixteen year old girl in his neighborhood to remove her clothes and masturbate while Doe recorded her actions on a video camera. Doe later allegedly distributed copies of the recording on the Internet and to others in the neighborhood.
Based on these allegations, contained in detailed and consistent statements from the victim and three other witnesses, Doe was charged with posing or exhibiting a child in a state of nudity, distributing child pornography, and possessing child pornography. At trial, Doe's motion for required findings of not guilty was allowed as to the posing and possession charges, and a jury then found him not guilty of the distribution charge. Despite this favorable resolution, the hearing examiner found the details of the report to be sufficiently reliable to warrant consideration in classifying Doe, particularly where the police were furnished with a copy of the video in which they recognized the victim, and where the victim had no motive to lie.
A hearing examiner may rely on statements contained in a police report "depending on the general plausibility and consistency of the victim's or witness's story, the circumstances under which it is related, the degree of detail, the motives of the narrator, the presence or absence of corroboration and the like." Doe, Sex Offender Registry Bd. No. 10304 v. Sex Offender Registry Bd., 70 Mass. App. Ct. 309, 313 (2007). "[T]he fact that Doe was ultimately acquitted of the criminal charges does not render the report inadmissible or unreliable." Doe, Sex Offender Registry Bd. No. 356011 v. Sex Offender Registry Bd., 88 Mass. App. Ct. 73, 79 (2015) (Doe No. 356011 ), citing Soe, Sex Offender Registry Bd. No. 252997 v. Sex Offender Registry Bd., 466 Mass. 381, 396 (2013) (Soe No. 252997 ).
Given these well-established principles, the burden here is on Doe to demonstrate some particular reason why the required findings and not guilty verdict in his case render the hearsay in the police report unreliable. These dispositions could have resulted from a variety of factors that have little or nothing to do with the truth of the allegations-for example, the suppression of some evidence, as occurred here,[4] or the failure of a witness to appear at trial. Or, they could have resulted from witness recantations or other factors that might call the truth of the allegations into serious question. Doe failed to offer any evidence on this issue.
Also, that the Commonwealth failed to prove its case beyond a reasonable doubt at trial does not make the allegations unreliable under the lower standard of proof applicable at board hearings. Doe No. 356011, 88 Mass. App. Ct. at 80. Although the board must now find an offender's ultimate risk classification based on clear and convincing evidence, see Doe No. 380316, 473 Mass. at 298, Doe here concedes that subsidiary facts still need be proved only by a preponderance of the evidence.[5] We conclude that the hearing examiner did not err in relying on the police report to conclude that Doe had engaged in the conduct alleged, and then considering that conduct in determining Doe's ultimate risk classification.
3. Scholarly articles. Doe argues that the hearing examiner abused his discretion by giving insufficient weight to several scholarly articles that Doe submitted under 803 Code Mass. Regs. § 1.33(37) (requiring board to "consider any information that it deems useful in determining risk of reoffense and degree of dangerousness posed by any offender"). It is an abuse of discretion for a hearing examiner to reject "current, validated evidence" demonstrating the relevance of a risk factor not addressed in the board's regulations, unless the hearing examiner cites studies to the contrary. Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 607-608 (2013), citing Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 622-623 (2010). Judged against these standards, we see no abuse of discretion in the hearing officer's treatment of the articles that Doe submitted.
First, Doe criticizes the lack of weight given to articles he submitted showing that juveniles reoffend at different rates and for different reasons than adults. The hearing officer quite reasonably considered these articles irrelevant, both because the board's regulations now explicitly consider how various risk factors affect juveniles differently from adults, and because Doe himself had not merely offended as a juvenile but repeatedly reoffended as an adult.
Second, Doe argues that more weight should have been given to a 2008 article concluding that male offenders (like himself) who had male and female victims had no higher rates of recidivism than other sex offenders, and only those male offenders with exclusively male victims had higher recidivism rates. But the board's regulation, 803 Code Mass. Regs. § 1.33(17), cites four articles-the most recent dated 2007-concluding that male offenders who have offended against male victims reoffend at a higher rate. Doe's 2008 article does not cite, let alone question the validity of, those articles.
To the contrary, Doe's article acknowledges that "[r]eports have consistently found that sex offenders who have molested males are at substantially greater risk for sexual offense recidivism .... This general finding is so prevalent in the literature that it has even been included in the explanatory text for pedophilia in the Diagnostic and Statistical Manual of Mental Disorders-4th Edition-Text Revision (American Psychiatric Association, 2000)." Doe's article then goes on to suggest that the outlier result it reports might be explainable based on factors such as the specific population it studied: participants in a particular kind of treatment program where confidentiality is protected more than in other programs.
In these circumstances, the hearing examiner was not required to view Doe's single 2008 article as "current, validated evidence" demonstrating the relevance of a risk factor not addressed in the board's regulations. This is particularly so where the pertinent regulation cites articles as recent as 2007 reaching the contrary conclusion, and Doe's article itself acknowledges that this contrary conclusion is widely shared in the relevant literature and is in fact used in "most actuarial instruments" to predict sex offender recidivism.[6]
Finally, Doe faults the hearing examiner for giving too little weight to two articles about sex offender treatment. The first article suggests that participation in such treatment reduces recidivism rates-but so does the board's regulation, 803 Code Mass. Regs. § 1.33(32), and the hearing examiner's decision in Doe's own case. The examiner gave this factor only moderate weight, however, in accordance with 803 Code Mass. Regs. § 1.33(32)(a)(1), as Doe had not completed a course of treatment during his ten years of confinement and had no plan to do so upon release.
Doe's second article, from 2005, shows, according to him, that "lack of motivation and progress in treatment show little relationship to recidivism." But the hearing examiner's decision did not consider in any way Doe's degree of "motivation" in treatment. And to the extent the examiner's observation that Doe had failed to complete treatment is viewed as considering Doe's lack of "progress," such failure to complete treatment is a factor required to be considered by the board's regulations, 803 Code Mass. Regs. § 1.33(32)(a)(1), (3), and is supported by citations more recent than 2005, including a 2009 article by the same author who wrote the 2005 article Doe relies upon.[7]
Conclusion. Doe has failed to identify any error or abuse of discretion in the board's decision, and therefore we must uphold it.
Judgment affirmed.

Moreover, we note the obvious point that the seven rapes for which Doe was convicted in 2006 were committed as an adult.

The examiner's comment that Doe "harbored deviant sexual behaviors from a very young age" was not a diagnosis of a "mental abnormality," nor did the examiner cite it as supporting any of the board's other specific risk-aggravating factors. The comment created no need for expert evidence.

The docket from the criminal case reflects that Doe filed a motion to suppress, which was allowed in part, but the record before us contains no further details.

See generally Soe No. 252997, 466 Mass. at 387 ("[T]he hearing examiner may consider the facts underlying the alleged sex offenses if proved by a preponderance of the evidence"); Doe No. 356011, 88 Mass. App. Ct. at 80. Cf. Care & Protection of Laura, 414 Mass. 788, 791-793 (1993) (in care and protection cases, subsidiary facts need only be proved by preponderance of evidence, even though ultimate question of parental unfitness must be proved by clear and convincing evidence).

Also, Doe neither argued that factors specific to him made the 2008 article a better predictor of his recidivism rate than the relevant portion of the board's regulation, nor did he assert a claim that the 2008 article was a sufficient basis to hold that portion of the regulation invalid.

That 2005 article itself concluded that although "[i]n general, evaluations of treatment progress showed little relationship to recidivism ... [n]evertheless, there were some recent [studies] in which ratings of progress were significantly related to recidivism."